UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DONNELL JOHNSON,

               Petitioner,                     Case No. 13-cv-12632

v.                                    Honorable Patrick J. Duggan

JEFFREY WOODS,

               Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner James Donnell Johnson ("Petitioner"), a Michigan Department of Corrections prisoner currently confined at Chippewa Correctional Facility in Kincheloe, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 17, 2013.  In his petition, which is presently before the Court, Petitioner challenges his state-court convictions for:  kidnapping, in violation of Michigan Compiled Laws § 750.349; criminal sexual conduct in the second degree, in violation of Michigan Compiled Laws § 750.520c; and armed robbery, in violation of Michigan Compiled Laws § 750.529.  The habeas petition seeks relief on the following grounds:  (1) the trial court violated Petitioner's right to a fair trial by prefacing its charge to the jury with the comment that the case was

about a sad event; (2) the trial court violated Petitioner's right to a fair trial by allowing a police officer to bolster the complainant's credibility with her opinion about rape victims' behavior; and (3) the trial court sentenced Petitioner on the basis of inaccurate information.  (ECF No. 1).

Upon being ordered to respond to the petition, Respondent Jeffrey Woods ("Respondent") filed an answer to the petition, seeking denial of the application on grounds that Petitioner procedurally defaulted his first claim (judicial misconduct) and a portion of his third claim (offense variable one) and that the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Having thoroughly reviewed Petitioner's three claims and the corresponding Rule 5 materials,[1] the Court concludes that Petitioner is not entitled to issuance of the writ.  The Court will therefore deny Petitioner's application for the writ and dismiss the habeas corpus petition with prejudice.  The Court will also decline to issue a certificate of appealability.

## I. BACKGROUND

### A.  The Charges and Trial

---

[1] Rule 5 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, specifically subdivisions (c) and (d), sets forth the respondent's obligation to submit state court materials related to the conviction and appeal challenged in any § 2254 proceeding.

Petitioner was charged in Oakland County, Michigan with kidnapping, criminal sexual conduct in the first degree, and armed robbery. (5/3/10 Trial Tr. 20, 130-34.) His first trial ended in a mistrial because a clerk inadvertently included a copy of Petitioner's co-defendant's statements in the exhibits sent to Petitioner's jury. (12/21/09 Trial Tr. 3-8.) The Michigan Court of Appeals provided the following overview of the facts at Petitioner's second trial in Oakland County Circuit Court:

> The complainant alleged that defendant and three codefendants accosted and robbed her while she was sitting in her car in the parking lot of her apartment complex. She testified at trial that the group forced her at gunpoint into the back seat of her car and stole money from her purse. Over the next several hours, they coerced her into taking them to her apartment, and into purchasing them alcoholic beverages. She also testified that, before releasing her, defendant and the three other codefendants forced her to perform oral sex on each of them. The complainant immediately reported the robbery and kidnapping to the police, but delayed revealing the sexual assaults until two months later. After some of the perpetrators were arrested, they told the police that the complainant agreed to perform oral sex on them in exchange for their promise to return the money they stole from her. The complainant disclosed the sexual assaults after the police confronted her with this information.

*People v. Johnson*, No. 299196, 2012 WL 104742 (Mich. Ct. App. Jan. 12, 2012) (unpublished) (per curiam).

There was additional evidence that Petitioner's fingerprints were found on an exercise pole in the complainant's apartment (5/4/10 Trial Tr. 208-09) and that

3

the complainant identified Petitioner in a photo array before trial (*id*. at 84).   One of Petitioner's co-defendants, Jernell Plunk, corroborated much of the complainant's testimony about the events in question, but maintained that the complainant consented to the sex acts.   Plunk nevertheless pled guilty to a sex offense as part of a plea bargain that was offered to him in the case.  (5/5/10 Trial Tr. 49.)

Petitioner waived his right to testify (5/6/10 Trial Tr. 257), and the only defense witness was the complainant's ex-husband, who described the complainant as a pathological liar (*id*. at 156).   Both the prosecutor and defense counsel argued to the jury that the case was about the credibility of the witnesses.  (*Id*. at 172, 190.)   The defense theory was that the complainant was not credible and that Petitioner was guilty of larceny, but not the charged offenses.  (*Id*. at 219.)

## B.  The Verdict, Sentence, and Appeal

On May 7, 2010, the jury found Petitioner guilty of kidnapping, criminal sexual conduct in the second degree (as a lesser-included offense of criminal sexual conduct in the first degree), and armed robbery.  (5/7/10 Trial Tr. 3-4.)  The trial court sentenced Petitioner to imprisonment for concurrent terms of twenty to thirty years for the kidnapping and robbery and five to fifteen years for the criminal sexual conduct.  (6/18/10 Sent'g Hr'g Tr. 32.)

4

In an appeal as of right, Petitioner raised the same claims that he has presented to this Court. On January 12, 2012, the Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished, per curiam opinion. *Johnson*, No. 299163, 2012 WL 104742, at *1. Petitioner raised the same three issues in an application for leave to appeal in the Michigan Supreme Court. On June 25, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *People v. Johnson*, 491 Mich. 944; 815 N.W.2d 463 (2012) (table). On June 17, 2013, Petitioner filed the instant habeas corpus petition.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000)

(O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411, 120 S. Ct. at 1522. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 2066 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010).

6

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103, 131 S. Ct. at 786-87.

### III.  ANALYSIS

**A.  The Trial Court's Comment**

In his first ground for relief, Petitioner asserts that the trial court violated his rights to due process and a fair trial by prefacing its jury instructions with the comment that the case was about a sad event.  (5/6/10 Trial Tr. 230.)  Because the comment was made in the jury's presence, Petitioner contends that the comment was highly prejudicial because it communicated to the jury that the court had adopted the prosecution's view and accepted the complainant's story as fact.  Petitioner also contends that the comment is an indication that the judge was not a neutral and detached judge.

7

The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not object to the trial court's comment at trial. Accordingly, Respondent asserts that Petitioner's claim is procedurally defaulted.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997). The related doctrine prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the prisoner failed to abide by a state procedural rule. *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### 1. The First Factor: failure to comply with a state procedural rule

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve their claims

for appeal by first making an objection in the trial court. *People v. Carines*, 460 Mich. 750, 761-64, 597 N.W.2d 130, 137-39 (Mich. 1999). Petitioner admits that he did not object at trial to the trial court's comment that the case was about a sad event. Thus, the first factor is satisfied.

### 2. The Second Factor: enforcement of the rule

The Michigan Court of Appeals was the last state court to review Petitioner's claim in a reasoned opinion, and it reviewed Petitioner's judicial-misconduct claim for "plain error affecting [Petitioner's] substantial rights, because Petitioner did not object to the trial court's statement at trial and therefore did not preserve the issue for appeal. *Johnson*, No. 299163, 2012 WL 104742, at *1.[2] A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989))). Thus, the second procedural-default factor is satisfied.

### 3. The Third Factor: adequate and independent state ground

The third procedural default factor is satisfied if the state procedural rule in question was an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on

whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

Michigan's contemporaneous-objection rule is a well-established procedural rule, *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals actually relied on the rule to foreclose relief in this case. Therefore, the Court of Appeals order was an adequate and independent state ground for denying review of Petitioner's constitutional claim.

### 4. The Fourth Factor: cause and prejudice

The fourth and final factor is whether Petitioner has shown "cause" for his failure to object to the trial court's comment at trial and resulting prejudice. Petitioner asserts, as justification for the failure to object, that his attorney could have been reluctant to criticize the judge's behavior and risk incurring the judge's displeasure. But an attorney's conduct excuses a procedural default only if the conduct amounted to constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). Petitioner has not alleged ineffective assistance of counsel as "cause" for his procedural default, and, even if he had, "the exhaustion doctrine . . . generally requires that a claim of

ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 488-89, 106 S. Ct. at 2646.   Because Petitioner did not assert a claim of ineffective assistance of counsel in state court, he may not rely on his trial attorney's conduct as "cause" for his procedural default. In the absence of cause and prejudice, a petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that failure to consider [his claim] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).

A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496, 106 S. Ct. at 2649). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077 (2006).

11

Petitioner appears to allege that he is innocent (Pet. at ¶ 5), but stated at his sentencing hearing that he was taking full responsibility for his actions, that he knew what he did was wrong, and that there was no excuse for it.  (6/18/10 Sent'g Hr'g Tr. 31.)  He apologized to the complainant (*id*.), and has not produced any new evidence of actual innocence in his habeas petition.  Therefore, a miscarriage of justice will not occur as a result of this Court's failure to address Petitioner's claim on the merits.  His first claim is procedurally defaulted.

**B.  The Police Officer's Alleged Bolstering**

In his second claim, Petitioner alleges that the trial court violated his right to a fair trial by allowing a police officer to testify about the normal behavior of rape victims.   Petitioner contends that the officer's lay opinion bolstered the complainant's credibility and was inadmissible under the Michigan Rules of Evidence.  Petitioner contends that the officer lacked the requisite qualifications to offer an expert opinion on the subject and, even if she were qualified to offer an expert opinion, her opinion was objectionable because it was overly generalized.  The Michigan Court of Appeals concluded on review of this issue that the trial court did not abuse its discretion in permitting the police officer to testify on the issue because Petitioner opened the door to the testimony.

**1.  Legal Framework**

12

Errors in the application of state law, especially rulings on the admission or exclusion of evidence, usually are not questioned on habeas corpus review, *Seymour*, 224 F.3d at 552, because "federal habeas corpus relief does not lie for errors of state law[,]" *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991). A state-court's evidentiary error rises to the level of a federal constitutional claim warranting habeas corpus relief only if "the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70, 12 S. Ct. at 475).

## 2. Application

Oakland County Deputy Sheriff Genefer Harvey briefly testified on direct examination by the prosecutor that the complainant's description of the crimes, given to the law enforcement officials shortly after the crime, was "fractured" such that her rendition of the facts did not make sense. (5/3/10 Trial Tr. 178.) Indeed, Deputy Harvey indicated that she falsely told the complainant that there was a video recording capturing the events in the apartment complex's parking lot "to see

13

if she would then say okay you know well I made it up." (*Id.*)  Upon hearing this information, the complainant appeared excited, believing that the assailants would be identified through the video recording.  (*Id.*)

Defense counsel pursued this matter on cross-examination, asking Deputy Harvey whether she and the detectives who questioned the complainant had discussed the fact that the story did not make any sense.  Deputy Harvey responded that the story did seem confusing, fractured, and as though parts of it were omitted. (*Id*. at 206-07.) Deputy Harvey then said that, when she later found out about the sexual assault, she realized why the story sounded so fractured.

On re-direct examination, the prosecutor asked Deputy Harvey to explain her prior comment that she understood why the complainant's statements were so fractured after she learned about the sexual assault.  (*Id.* at 215-16.)  Over defense counsel's objections, Deputy Harvey was permitted to say that she learned at a two-day seminar on sexual assault that victims of sexual assault sometimes do not reveal that a sexual assault occurred because they do not want to talk about it, think about it, or deal with it.  So, according to Deputy Harvey, "their stories will actually become fractured because they will jump from one place to another trying to avoid the fact that they were sexually assaulted." (*Id*. at 218.)

14

The admission of this testimony was not fundamentally unfair for two reasons. First, as the Michigan Court of Appeals concluded, defense counsel arguably opened the door to these comments by asking Deputy Harvey on cross-examination whether the police had discussed the fact that the complainant's story did not make sense.

Second, a lay witness may give an opinion on matters "that are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based in scientific, technical, or other specialized knowledge within the scope of [Michigan] Rule [of Evidence] 702." Mich. R. Evid. 701. Michigan courts "have liberally applied MRE 701 in order to help develop a clearer understanding of facts for the trier of facts." *People v. Oliver*, 170 Mich. App. 38, 50, 427 N.W.2d 898, 904 (Mich. Ct. App. 1988) *judgment modified and case remanded*, 433 Mich. 862, 444 N.W.2d 527 (Mich. 1989).

Deputy Harvey's testimony was based on her perception of the complainant, and it clarified her prior comment that she understood why the complainant's version of the crime was fractured after she (Deputy Harvey) learned of the sexual assault. Additionally, her testimony was not based on overly scientific, technical,

15

or other specialized knowledge.  Therefore, it was admissible as the opinion of a lay witness.

Finally, Deputy Harvey did not claim to be an expert on sexual assault, and she admitted that sexual assault victims do not always act in the same manner.  She further admitted that sometimes people report being the victim of a crime even though no crime transpired.  (5/3/10 Trial Tr. 219-23.)

To conclude, the deputy's disputed comments were not fundamentally unfair and did not deprive Petitioner of due process.  Therefore, Petitioner is not entitled to relief on his second claim.

## C.  The Sentence

In his third and final claim, Petitioner alleges that he was sentenced on the basis of inaccurate information.  The basis for this claim is the trial court's scoring of four offense variables of the state sentencing guidelines.  The Michigan Court of Appeals reviewed Petitioner's claim about offense variable one for "plain error" because Petitioner did not preserve his claim about that offense variable by objecting at the sentencing hearing.  As for the scoring of offense variables two, seven, and eleven, the Court of Appeals determined that the trial court did not err, and was justified, in scoring the variables as it did.

16

The state trial court's alleged misinterpretation or misapplication of state sentencing guidelines "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (unpublished), and "[a] federal court may not issue the writ on the basis of a perceived error of state law[,]" *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 875 (1984). However, because Petitioner alleges that the trial court's scoring of the offense variables violated his constitutional right to be sentenced on accurate information, the Court will briefly review his claims, as a sentence based on "extensively and materially false" information, which the prisoner had no opportunity to correct through counsel, violates due process. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948).

## 1.  Offense Variables One and Two[3]

Petitioner received a score of fifteen points for offense variable one, which "is aggravated use of a weapon." Mich. Comp. Laws § 777.31(1). Fifteen points

---

[3] Although Respondent contends that Petitioner procedurally defaulted his claim about offense variable one, "a procedural default . . . is not a jurisdictional matter[.]" *Trest*, 522 U.S. at 89, 118 S. Ct. at 480. Accordingly, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citation omitted). This is because "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). Here, the Court deems it more efficient to address Petitioner's claim on the merits than Respondent's contention that the claim has been procedurally defaulted. As such, this is the court the Court pursues.

for offense variable one is appropriate if "[a] firearm was pointed at or toward a victim . . . ." *Id.* § 777.31(1)(c). Petitioner received five points for offense variable two, which "is lethal potential of the weapon possessed or used." Mich. Comp. Laws § 777.32(1). Five points for offense variable two is appropriate if "[t]he offender possessed or used a pistol, rifle, [or] shotgun . . . ." *Id.* § 777.32(1)(d). Petitioner claims that the gun used during the offense was a BB gun and did not qualify as a firearm under state law.

The gun used in the crimes was never recovered (5/6/10 Trial Tr. 73-74, 130), and both the complainant and Petitioner's co-defendant, Jernell Plunk, described the weapon as a gun. (5/4/10 Trial Tr. 12 (the complainant's testimony about the gun); *id.* at 218, 227-29, 259, 264, and 5/5/10 Trial Tr. 76, 88 (Plunk's testimony about the gun).) The complainant, moreover, testified that Petitioner placed a handgun against her head, cocked the gun, and threatened to blow off her head or mutilate her leg. (5/4/10 Trial Tr. 12-14, 23.) And Plunk testified that he did not know, or told the police that he did not know, whether the gun was a BB gun. (5/5/10 Trial Tr. 54.)

Furthermore, as the Michigan Court of Appeals noted,

not all BB guns are excluded from the statutory definition of a firearm. Only handguns "designed and manufactured exclusively for propelling BB's not exceeding .177 calibre by means of spring, gas or air" are excluded from the statutory definition. MCL 8.3t.

18

*Johnson*, No. 299163, 2012 WL 104742, at *3.  Because the preponderance of the evidence supported a finding that a firearm was used in the crime, the trial court did not rely on materially false information when scoring offense variables one and two and Petitioner's claim of error cannot be sustained.

### 2. Offense Variable Seven

Offense variable seven "is aggravated physical abuse."  Mich. Comp. Laws § 777.37(1).  Petitioner received fifty points for this variable, which would be correct if he treated the victim "with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety [the] victim suffered during the offense."  *Id.* § 777.37(1)(a).  "Sadism" is defined in the statute as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."  *Id.* § 777.37(3).

Petitioner claims that the record is devoid of any evidence of sadism, torture, excessive brutality, or conduct designed to substantially increase the victim's fear and anxiety.  The evidence at trial, however, established that Petitioner and his accomplices subjected the complainant to prolonged pain and humiliation and substantially increased her fear and anxiety during the offense.  In the words of the Michigan Court of Appeals,

19

> [t]he evidence indicated that defendant and his co-felons subjugated the complainant to their authority for an extended period. They intruded into her apartment, searched her personal possessions, and held her captive in her own vehicle. During the encounter, they clicked the gun against the back of her head and threatened to "blow [her] head off or take the gun down and ... blow [her] leg off, mutilate [her] leg." The complainant's ordeal culminated in the indignity of serially performing fellatio on each of her four captors while the others watched, and while defendant attempted to sexually penetrate her from behind.

*Johnson*, No. 299163, 2012 WL 104742, at *4.

The Court of Appeals accurately concluded that "[t]his evidence was sufficient to establish that defendant's conduct was intended to substantially increase the complainant's fear and anxiety during the offense, and that she was also subject to prolonged humiliation for defendant's own gratification." *Id*. This Court concludes that the state court did not rely on materially false information when scoring offense variable seven at fifty points.

### 3. Offense Variable Eleven

Petitioner received twenty-five points for offense variable eleven, which involves "criminal sexual penetration[.]" Mich. Comp. Laws § 777.41(1). Twenty-five points is appropriate if one criminal sexual penetration occurred. *Id.* § 777.41(1)(b). Petitioner claims that he should not have been scored any points for offense variable eleven because the jury acquitted him of criminal sexual conduct in the first degree, which was the only charge that involved sexual penetration.

20

Petitioner nevertheless admits that an acquittal of an offense does not necessarily preclude its use when scoring the sentencing guidelines. *See People v. Harris*, 190 Mich. App. 652, 663; 476 N.W.2d 767, 773 (1991) (acknowledging that a sentencing court may consider criminal activity of which the defendant was acquitted "because an acquittal does not necessarily mean that the defendant did not engage in criminal conduct, but only demonstrates a lack of proof beyond a reasonable doubt"). And "a sentencing factor need be proved only by a preponderance of the evidence." *Id*.

The complainant testified that she performed oral sex on Petitioner and his three accomplices because she was told to do so while someone had a gun pointed at her. She claimed that she was trying to spare her life at the time and get out of the situation. (5/4/10 Trial Tr. 64-67, 69, 74.) Because the preponderance of the evidence suggested that at least one penetration occurred, Petitioner was appropriately assessed twenty-five points for offense variable eleven.

The Court concludes for the foregoing reasons that Petitioner was not sentenced on the basis of extensively and materially false information. The Court therefore declines to grant relief on Petitioner's third claim.

## IV.  CERTIFICATE OF APPEALABILITY

21

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 484, 120 S. Ct. at 1604.

Having considered the matter, the Court concludes that reasonable jurists could not debate the correctness of the Court's assessment of Petitioner's second and third claims.  Reasonable jurists also would not find the Court's procedural ruling on Petitioner's first claim debatable.  Nor would reasonable jurists conclude

that the allegations in ground one state a valid claim of the denial of a constitutional right.   Accordingly, a certificate of appealability shall not issue. However, because an appeal could be taken in good faith, and because Petitioner was permitted to proceed *in forma pauperis* in this Court (ECF No. 5), Petitioner may proceed *in forma pauperis* on appeal should he choose to seek a certificate of appealability from the United States Court of Appeals for the Sixth Circuit.   28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to the relief he seeks.   With respect to habeas claim one, the Court concludes that review of the claim is barred because Petitioner has failed demonstrate cause to excuse his state-court procedural default. With respect to the merits of claims two and three, the state appellate court's adjudication of Petitioner's claims was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent.   Because Petitioner has not demonstrated that he is being held in violation of his constitutional rights, he is not entitled to the issuance of the writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability **SHALL NOT ISSUE** but that Petitioner may proceed *in forma pauperis* should he seek a certificate of appealability in the appellate court.

Dated: September 21, 2015

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**James Donnell Johnson**, #716440
Chippewa Correctional Facility
4269 W. M-80
Kincheloe, MI  49784

**Laura Moody, A.A.G.**
**Andrea M. Christensen-Brown, A.A.G.**

24